UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR.,

        Plaintiff,

                                Case No. 2:13-cv-219

v.

                                HON. ROBERT HOLMES BELL

ROBBY PEDERSON,

        Defendant.

_____/

## **O P I N I O N**

On July 11, 2013, Plaintiff Kenneth Colvin, Jr. filed a complaint in this Court under 42 U.S.C. § 1983, raising a First Amendment retaliation claim against Defendant Robby Pederson. (ECF No. 1.) Both parties have filed motions for summary judgment. (Pl.'s Mot. Summ. J., ECF No. 66; Def.'s Mot. Summ. J., ECF No. 57.) On October 13, 2015, United States Magistrate Judge Timothy P. Greeley issued a report and recommendation (R&R), recommending that both motions be denied. (ECF No. 91.) The matter is before the Court on Defendant's objection to the R&R (ECF Nos. 98) and Plaintiff's response (ECF No. 99). For the reasons that follow, the R&R will be approved and adopted as the Opinion of this Court.

## **I.**

At all relevant times, Plaintiff was incarcerated at the Alger Correctional Facility (Alger) in Munising, Michigan. Defendant was a Food Service Leader at Alger. While eating

in the cafeteria on June 17, 2013, Plaintiff called Defendant to his table to inform Defendant

that his Kosher Meal tray was missing a vegetarian protein substitute. (Pederson Aff. ¶ 3,

ECF No. 58-1.) Defendant contends that when he approached the table, Plaintiff "stated to

me with direct eye to eye contact from approx. 2 feet away 'you had better get with Food

Leader [Mary] Carl and teach her how to talk to prisoners before I slap her bitch ass in the

face[.]'" (Misconduct Report, ECF No. 1-1, PageID.5; *see also* Pederson Aff.¶ 3.) Plaintiff

denies making this statement. Instead, Plaintiff alleges that he had a discussion with both

Defendant and Carl, and informed them that he was going to file a grievance regarding his

Kosher Meal tray before leaving the cafeteria. (Colvin Aff. ¶¶ 2, 6, ECF No. 68.) Other

prisoners who witnessed the incident also stated that, prior to leaving the cafeteria, Plaintiff

told Defendant that he would be writing a grievance. (Hr'g Investigator Report, ECF No. 25-

1, at PageID.151-53.)

The record indicates that Plaintiff left the cafeteria just before 12:00 p.m. (Misconduct

Report, ECF No. 1-1.) At 1:20 p.m., Defendant issued a misconduct report against Plaintiff

for "threatening behavior" due to the alleged statement made about slapping Carl. (*Id.*) The

hearing officer, however, did not uphold the charge, stating, in part:

> Prisoner claims that he did not threaten FSL Carl and requested the video to
> prove that point. The video is far more consistent with the prisoner's assertion
> that he had NOT threatened Carl tha[n] the Food Steward's claim that the
> prisoner HAD threatened Carl. The video showed the prisoner talking with
> someone on the food service line—apparently Carl—when Pederson walked
> over at 11 58 01. According to the information provided by Pederson this is the
> time that the prisoner had threatened to slap Carl['s] "bitch ass in the face."
> Carl then walked over to the prisoner and Pederson 12 seconds later . . . What

2

is surprising, if a threat had been made, is that Pederson left Carl with the prisoner 8 seconds later and walked away. If the prisoner had threatened to "slap her bitch ass in the face," it makes absolutely no sense for Pederson not to warn Carl, which apparently he did not do as she remained with the prisoner, or to walk away and leave Carl standing right next to the prisoner. If nothing else, Pederson should have remained as a deterrent to any physical attack on Carl instead of leaving the area. Although staff members are trained to downplay and deescalate threatening situations, they also watch each other's backs. It makes no sense that the Food Steward would leave Carl with the prisoner less than twenty seconds after the prisoner had threatened to slap her. That does not ring true. Prisoner is believed that no threat was made based on the reporting staff member's own actions as evidenced by the video. Charge not upheld.

(Hr'g Investigator Report, PageID.7.)

Plaintiff alleges that the false misconduct ticket was written solely out of retaliation for Plaintiff's threat to file a grievance. Defendant contends that he originally decided to issue Plaintiff a misconduct ticket for insolence (rather than threatening behavior) as soon as Plaintiff made the statement about slapping Carl and that he "did not think that FSL Carl was in any danger because I saw Plaintiff's statement as derogatory and not threatening in nature." (Pederson Aff. ¶¶ 4, 5.) Defendant states that he changed the misconduct ticket to "threatening behavior" after speaking with Sergeant Rankin, and that he "would have written a misconduct ticket against any MDOC prisoner under the same circumstances. I wrote the misconduct ticket based on what Plaintiff said to me before FSL Carl arrived to discuss his issues . . . Plaintiff's allegation that my actions were retaliatory in nature is false." (*Id.* ¶¶ 6-8.)

The R&R found that summary judgment was not appropriate for either party because

a question of fact exists as to whether the misconduct ticket was issued in retaliation for Plaintiff's threat to file a grievance, and noted that "this issue is solely one of credibility." (R&R 5, ECF No. 91.) The R&R also found that Defendant is not entitled to qualified immunity because a question of fact exists regarding whether the misconduct ticket was issued out of retaliation, and "Defendant cannot argue that the law regarding issuing false misconduct tickets in retaliation for a prisoner's use of the grievance system was not clearly established in June 2013."

Defendant raised one objection to the R&R. Defendant "believes that the Magistrate erred in determining that Plaintiff had satisfied element #3 of a retaliation claim. That is that the adverse action of the ticket was motivated at least in part by the plaintiff's protected conduct." (Def.'s Objections, ECF No. 98, PageId.440.) Accordingly, Defendant contends that he is entitled to prevail on summary judgment and entitled to qualified immunity.

The Court makes a de novo determination of those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

4

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989)).

## III.

### A. First Amendment Retaliation

A First Amendment retaliation claim, such as the one in this case, "essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendant's objection to the R&R relates only to the third element, and argues that Plaintiff has presented only a scintilla of evidence in support of his position that the threatening behavior misconduct ticket that was written against him was retaliatory. Accordingly, the Court will discuss only the third element.

Under the framework set forth in *Thaddeus-X*, the plaintiff has the initial burden of establishing that "the adverse action was motivated at least in party by the prisoner's protected conducted." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). If Plaintiff can make this showing, "then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct." *Id.*

In order to make this showing, Plaintiff must provide more than "conclusory allegations of retaliatory motive 'unsupported by material facts.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.

1987)). The Sixth Circuit has acknowledged the difficulty in producing direct evidence of a prison official's motive. "Motive is often very difficult to prove with direct evidence in retaliation cases. Circumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). "The circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Hill*, 630 F.3d at 475-76.

In this case, Plaintiff relies primarily on the temporal proximity between the adverse action and protected conduct to demonstrate causal connection. And "[i]n analyzing the facts in temporal proximity cases, [the Sixth Circuit has] always looked at the totality of the circumstances to determine whether an inference of retaliatory motive can be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). The Sixth Circuit has summarized its "case law on the weight given to temporal proximity in First Amendment retaliation cases 'as recognizing that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference." *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010) (quoting *Vereecke*, 609 F.3d at 401). And in the employment context, the Sixth Circuit has recognized that:

> [I]f an employer immediately retaliates against an employee upon learning of
> his protected activity, the employee would be unable to couple temporal

proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action. Moreover, such a holding would accord with cases from other circuits, which recognize that, in rare cases, temporal proximity alone may suffice to show a causal connection.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (collecting cases).

For purposes of addressing Defendant's summary judgment motion,[1] the Court must view the facts in the light most favorable to Plaintiff. As the magistrate judge recognized, a question of fact exists that precludes this Court from granting summary judgment in favor of Defendant. Plaintiff has stated in a sworn affidavit that "[a]t no time during my discussing with Defendant Robby Pederson did I tell him 'You had better get with Food Leader Carl and teach her how to talk to prisoners before I slap her bitch ass in the face.'" (Colvin Aff. ¶ 2.) This is supported by the fact that the hearing officer found Plaintiff not guilty of threatening conduct after a misconduct report was filed. (*See* Hr'g Report, ECF No. 1-1, PageID.7 ("It makes no sense that the Food Steward would leave Carl with the prisoner less than twenty seconds after the prisoner had threatened to slap her. That does not ring true. Prisoner is believed that no threat was made based on the reporting staff member's own actions as evidenced by the video. Charge not upheld.").) Plaintiff has provided evidence that, instead, he told Defendant and Carl that he was going to file a grievance, and that a misconduct ticket

---

[1] Because Plaintiff has not filed objections to the magistrate judge's denial of Plaintiff's summary judgment motion, the Court will address only Defendant's objections, and will not consider whether a grant of summary judgment in favor of Plaintiff was appropriate.

was issued less than two hours later. (Hr'g Investigator Report, ECF No. 25-1, at PageID.151-53.)

Here, assuming that Plaintiff never made the statement about slapping Carl in the face, Defendant issued an apparently fabricated misconduct ticket mere hours after Plaintiff threatened to file a grievance. Plaintiff left the cafeteria immediately after telling Defendant he was going to file a grievance and, thus, "little other than the protected activity could [have] motivate[d] the retaliation." *Mickey*, 516 F.3d at 525.   Accordingly, while viewing the facts in the light most favorable to Plaintiff, Plaintiff has satisfied his initial burden of proving that the adverse action was motivated at least in part by his protected conduct.

Thus, the burden shifts to Defendant to demonstrate that he would have taken the same action even in the absence of Plaintiff's protected conduct. *Hill*, 630 F.3d at 475. "Where a plaintiff sets forth 'specific, nonconclusory allegations' of retaliation 'that could support a jury verdict at trial,' the defendant cannot carry his or her burden at summary judgment by offering mere 'summary denials.'" *Reynolds-Bey v. Harris*, 428 F. App'x 493, 505 (6th Cir. 2011) (quoting *Thaddeus-X*, 175 F.3d at 399). In his objections to the R&R, Defendant states that "through his affidavit, [he has] demonstrated that he would have taken the same action in the absence of Plaintiff's threat to file the grievance." (Def.'s Objections 2, ECF No. 98.) A self-serving affidavit stating that Defendant would have taken the same action regardless of Plaintiff's threat "consists of precisely the type of summary denial at

issue in *Thaddeus-X*." *See id.* (citing *Thaddeus-X*, 175 F.3d at 384). Accordingly, Defendant has not met his burden here.

## B. Qualified Immunity

The Court also finds that Defendant is not entitled to qualified immunity at this stage. "Civil rights defendants enjoy qualified immunity from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit uses a tripartite analysis when evaluating claims of qualified immunity:

> First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

As stated above, a question of fact exists as to the first element: whether a constitutional violation occurred. At this stage of the proceedings, this is sufficient to deny Defendant qualified immunity. *See Duncan v. Jackson*, 243 F. App'x 890, 897 (6th Cir. 2007) (denying qualified immunity "[b]ecause a question of fact remains concerning the validity of" the plaintiff's claim that his constitutional rights were violated). As to the second element, the Sixth Circuit "has previously held that—at least as of 1995—a prisoner's 'right to be free from retaliation, in the form of the issuance of a false major misconduct ticket,

10

against the exercise of his First Amendment rights' is clearly established for purposes of qualified immunity." *Stone*, 245 F. App'x at 475 (quoting *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004)). As to the third element, the Court finds that what the official allegedly did—issue a false misconduct ticket in retaliation for Plaintiff's threat to file a grievance—was objectively unreasonable in light of the clearly established constitutional rights.

Accordingly, Defendant's claim of qualified immunity will be denied.

## IV.

For the reasons stated above, both parties' motions for summary judgment (ECF Nos. 57, 66) will be denied. An Order will enter consistent with this Opinion.


Dated: <u>March 9, 2016</u>                              <u>/s/ Robert Holmes Bell</u>
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE